```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/04/2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
JANET LANDAETA, et al.,                                                  :
:
                Plaintiffs,    :    12 Civ. 4462 (JMF)
:
    -v-                                                                :    OPINION AND ORDER
:
NEW YORK AND PRESBYTERIAN HOSPITAL, INC.,    :
:
                Defendant.    :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Maria Eduarda Rocha-Waid, Ruth Washington-Cohen, and Janet Landaeta (collectively, "Plaintiffs") bring suit against New York and Presbyterian Hospital, Inc. ("Defendant" or the "Hospital") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.*, alleging unpaid wages, unpaid overtime hours, and unlawful retaliation.  (Am. Compl. (Docket No. 15)).  Defendant now moves for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Docket No. 33).  For the reasons explained below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

## BACKGROUND

       The following facts, taken from the admissible materials submitted by the parties, are viewed in the light most favorable to Plaintiffs, as they are the non-moving parties.  *See, e.g.*, *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 157-58 (2d Cir. 2012).

       The Hospital provides medical services at facilities in Manhattan and Westchester.  (Affidavit of Evelyn Ramos ("Ramos Affidavit") (Docket No. 35) ¶ 3).  It is comprised of five

1

campuses: the Weill Cornell Medical Center, the Columbia University Medical Center, the Morgan Stanley Children's Hospital, the "Westchester campus," and the Allen Hospital. (*Id.* ¶ 3). The Hospital is required by law to provide interpretation services to its non-English speaking patients. (Affidavit in Support of Motion for Summary Judgment ("Kelly Affidavit") (Docket No. 36), Attachments 11-12 ("Ramos Dep.") 22:21-23:8).

Until early 2012, the Hospital employed three types of interpreters: on-site "agency" interpreters, on-site "freelance" interpreters,[1] and telephonic interpreters. (Ramos Affidavit ¶ 4). Agency interpreters performed interpretations at the Hospital, but worked for independent agencies with whom the Hospital contracted. (*Id.* ¶ 5). Freelance interpreters were similar to agency interpreters in that they performed in-person interpretations, but they worked directly for the Hospital. (*Id.*). Telephonic interpreters, as the name suggests, provided interpretation services over the telephone. (*Id.* ¶ 4).

Plaintiffs were freelance interpreters. Plaintiff Rocha-Waid, who speaks English, French, Spanish, and Brazilian Portuguese, initially worked for a translation agency that contracted with the Hospital, CP Language, Inc. ("CP"), but then, in either 2004 or 2005, began working directly for the Hospital (Kelly Affidavit, Ex. A, at 1; Kelly Affidavit, Attachment 4 ("Rocha-Waid Dep.") 18:14-19:4; Declaration of Maria Eduarda Rocha-Waid ("Rocha-Waid Decl.") (Docket No. 44) ¶ 2). Plaintiff Washington-Cohen, who speaks English, French, Spanish, and Portuguese as well, also began working at the Hospital through CP, and became a freelance interpreter in 2002. (Kelly Affidavit, Ex. B, at 1; Kelly Affidavit, Attachments 5-6 ("Washington-Cohen Dep.") 18:9-13; Declaration of Ruth Washington-Cohen ("Washington-Cohen Decl.") (Docket

---

[1] Plaintiffs refer to this type of interpreters as "in-house," (*see, e.g.*, Pls.' Mem. 1), while Defendant calls them "freelance" interpreters. (Mem. Law Supp. Mot. Summ. J. (Docket No. 37) 1). The Court adopts Defendant's preferred term for purposes of this motion.

No. 43) ¶ 2). Plaintiff Landaeta began working at the Hospital as an intern in the financial office, but accepted a position as a freelance Spanish interpreter in 2005. (Kelly Affidavit, Attachments 7-8 ("Landaeta Dep.") 54:12-55:7; Declaration of Janet Landaeta ("Landaeta Decl.") (Docket No. 42) ¶¶ 2-3). Around that same time, Landaeta also began work as an administrator in the Hospital's Interpreter Services Office (the "ISO") under Ariel Lenarduzzi, the Hospital's Manager of Interpreter Services. (Landaeta Dep. 54:16-23; Landaeta Decl. ¶ 3). From January 2006 to January 2012, Landaeta spent approximately two-thirds of her time interpreting (typically from 9:00 a.m. to 3:00 p.m.) and one-third of her time performing administrative tasks in the ISO (typically from 3:00 p.m. to 6:30 or 7:00 p.m.). (Landaeta Decl. ¶ 10).

The nature of Plaintiffs' interpretation work is a matter of some dispute, but, at a basic level, it involved performing a number of pre-scheduled interpretations at the Hospital each day. Typically, a provider (such as a physician or nurse) would request an interpreter the day before an appointment by contacting the ISO, and the ISO would contact an interpreter that it deemed appropriate for the assignment. (Ramos Affidavit ¶ 5). When the ISO determined the job was appropriate for a freelance interpreter, it would contact that freelance interpreter the evening before the assignment. (*Id.*). Through this process, a freelance interpreter would procure one or more assignments for a given day and would proceed from assignment to assignment in the Hospital. (*Id.*; Washington-Cohen Dep. 35:22-36:7). Before the first assignment, the interpreter would report to the ISO, and the interpreter would return to the ISO at the end of the day. (Washington-Cohen Dep. 36:17-24, 40:12-14; Landaeta Decl. ¶¶ 9, 15; Rocha-Waid Decl. ¶¶ 9, 11). Plaintiffs would also return to the ISO when they had gaps between assignments, although whether they were required to do so or simply did so by choice is in dispute. (Pls.' Opp'n to Def.'s Statement of Uncontested Facts (Docket No. 48) ¶ 55). Plaintiffs were compensated

based on the number of hours they spent interpreting, multiplied by the applicable hourly rate. (Ramos Affidavit ¶ 9).

In March 2012, the Hospital ended its use of freelance interpreters. (Ramos Dep. 96:21-97:5). The reasons for this decision are also in dispute. According to Plaintiffs, the Hospital "eliminated the entire in-house medical interpreter program" (*i.e.*, the freelance interpreters) in response to a complaint lodged by Washington-Cohen that she was misclassified as an independent contractor. (Pls.' Mem. Law Opp'n Def.'s M. Summ. J. ("Pls.' Mem.") (Docket No. 41) 1). The Hospital, however, argues that its decision to end the use of freelance interpreters was motivated by a desire to cut costs and was part of a broader, Hospital-wide initiative. (Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem.") (Docket No. 37) 8-9, 11). In any case, Plaintiffs all stopped working at the Hospital just before it formally ended its use of freelance interpreters. (Rocha-Waid Decl. ¶ 18; Washington-Cohen Decl. ¶ 31; Landaeta Decl. ¶ 31).

Plaintiffs allege that, in the course of their work, they were not compensated for certain "off-the-clock" work, in violation of the FLSA and NYLL. Specifically, Plaintiffs contend that they were required to arrive at the ISO ten to fifteen minutes before the start of their first interpretation assignment each day, and to return to the ISO for ten to thirty minutes after their final interpretation assignment each day, but were not compensated for this time. (Am. Compl. ¶¶ 16, 36, 41, 60-65; Washington-Cohen Decl. ¶ 11; Rocha-Waid Decl. ¶ 11). They further allege that they were not paid overtime rates in weeks when they worked more than forty hours (Am. Compl. ¶¶ 37, 42, 66-71), and were not paid for breaks of twenty minutes or less (Washington Cohen Decl. ¶ 32; Rocha-Waid Decl. ¶ 19; Landaeta Decl. ¶ 32). Finally,

Plaintiffs contend that the Hospital unlawfully terminated their employment in retaliation for Washington-Cohen's exercising rights under the FLSA and NYLL. (Am. Compl. ¶¶ 72-75).[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

---

[2] In the Amended Complaint, Plaintiffs make these allegations only with respect to Plaintiffs Landaeta and Washington-Cohen. (Am. Compl. ¶¶ 73, 75). Like Defendant, the Court assumes that Plaintiffs intended to bring a retaliation claim on Rocha-Waid's behalf as well. (Def.'s Mem. 21). In any case, it makes no difference to the Court's analysis or conclusion.

## DISCUSSION

As noted, Defendant moves for summary judgment with respect to all of Plaintiffs' claims. Specifically, Defendant advances three arguments as to why summary judgment is warranted. First, it contends that Plaintiffs are independent contractors, and therefore not protected by the FLSA or NYLL. (Def.'s Mem. 11-20). Second, Defendant maintains that Plaintiffs' wage claims should be dismissed because any damages are *de minimis*. (*Id.* at 20). Finally, Defendant argues that Plaintiffs have not stated a viable retaliation claim. (*Id.* at 21-25). The Court addresses the three arguments in turn.

**A. Independent Contractor Versus Employee Status**

The FLSA defines employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and, circularly, defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § (203)(d); *see Magnuson v. Newman*, No. 10 Civ. 6211 (JMF), 2013 WL 5380387, at *6 (S.D.N.Y. Sept. 25, 2013). In assessing whether an individual is an employee under the FLSA, courts consider the following factors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988); *see also Hart v. Rick's Cabaret Int'l, Inc.*, No. 09 Civ. 3043 (PAE), 2013 WL 4822199, at *5 (S.D.N.Y. Sept. 10, 2013). The overriding consideration under the FLSA is the "economic reality" of the relationship — that is, whether "the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Brock*, 840 F.2d at 1059.

The NYLL defines "employee" as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business, or service," N.Y. Lab. Law § 190(3).  In determining whether a worker is an employee or independent contractor under the NYLL, courts consider factors similar to those used in the FLSA inquiry, although with a slightly different emphasis.  Specifically, courts consider the factors outlined in *Bynog v. Cipriani Group, Inc.*, 1 N.Y.3d 193 (2003): "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  *Id.* at 198; *see also Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 598 (E.D.N.Y. 2012).  Unlike the FLSA, which focuses on the economic reality of the relationship, "the critical inquiry in determining whether an employment relationship exists [under the New York Labor Law] pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Bynog*, 1 N.Y.3d at 198.  Nevertheless, many courts have commented upon the similarity of the two tests, and some have even analyzed the two together.  *See, e.g.*, *Sellers v. Royal Bank of Canada*, 12 Civ. 1577 (KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014); *Browning*, 885 F. Supp. 2d at 599; *see also Hart*, 2013 WL 4822199, at *16-17 ("[T]here appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa).").

The fact-intensive nature of the two tests often precludes courts from granting summary judgment.  *See, e.g.*, *Evans v. MassMutual Fin. Grp.*, 856 F. Supp. 2d 606, 610 (W.D.N.Y. 2012) ("A determination of [whether a plaintiff is an employee of the defendant or an independent contractor] . . . typically cannot be made until the underlying facts concerning the nature of the

7

plaintiff's and defendant's relationship are resolved. Thus, a plaintiff's status as either an employee or an independent contractor may present issues of fact that cannot be decided until trial."); *Sikorski v. Burroughs Drive Apartments, Inc.*, 762 N.Y.S.2d 718, 721 (4th Dep't 2003) (noting that the determination of "whether an individual is an employee or an independent contractor . . . usually presents questions of fact sufficient to preclude summary judgment" (internal quotation marks omitted)). At the same time, while "[t]he existence and degree of each factor is a question of fact . . . the legal conclusion to be drawn from those facts — whether workers are employees or independent contractors — is a question of law." *Brock*, 840 F.2d at 1059. Accordingly, courts can and do grant summary judgment on this threshold inquiry, but only where there are no disputed issues of material fact. *See, e.g.*, *Browning*, 885 F. Supp. 2d at 598; *Sikorski*, 762 N.Y.S.2d at 721 ("[W]here evidence is undisputed, and the facts are compellingly clear, the issue may be determined as a matter of law." (internal quotation marks omitted)); *Melbourne v. New York Life Ins. Co.*, 707 N.Y.S.2d 64, 66 (1st Dep't 2000) (similar).

Because the inquiries under the FLSA and NYLL have slightly different emphases, and because the question of whether "the tests for 'employer' status are the same . . . has not been answered by the New York Court of Appeals," *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013), the Court will conduct the two inquiries separately. Before doing so, however, the Court pauses briefly to address Defendant's argument that the Court need not engage in the two fact-intensive inquiries at all on the ground that Plaintiffs are judicially estopped from claiming to be employees by virtue of their tax filings, in which they classified themselves as independent contractors. (Def.'s Mem. 12). Put simply, Defendant is wrong. *See, e.g.*, *Hart*, 2013 WL 4822199, at *17 (stating that in both inquiries "it is not significant . . . how the worker identified herself on tax forms"); *Deboissiere v. Am. Modification Agency*, 2010 WL 4340642, at *3

8

(E.D.N.Y. Oct. 22, 2010) (holding that classifying oneself as an independent contractor for tax purposes does "not quite ris[e] to the level of estoppel," but that it could "impede [one's] ability to claim employee status"); *In re Stuckelman*, 791 N.Y.S.2d 225, 226 (3d Dep't 2005) (affirming ruling that claimant was an employee despite "[t]he fact that the . . . claimant deducted expenses on her federal tax return as if she were self-employed"). Plaintiffs' tax filings are plainly relevant to the independent contractor versus employee inquiries — and may well make it difficult for Plaintiffs to prevail on the issue come trial — but they do not preempt the inquiries altogether. With that, the Court turns to address the FLSA and then the NYLL.

### 1. FLSA Claims

First, Defendant is not entitled to summary judgment on the FLSA claims because there are genuine disputes over the "existence and degree" of some of the *Brock* factors. For instance, the parties dispute the degree of the second factor, Plaintiffs' "opportunity for profit or loss." Although Defendant notes that, on their tax returns, Plaintiffs subtracted business expenses from gross receipts in order to calculate their profits (Def.'s Mem. 17), Plaintiffs correctly point out that they had no investment in the Hospital, could not profit beyond their hourly rates, and could not lose money providing interpreter services. *See Brock*, 840 F.2d at 1059-60 (affirming district court's finding that nurses had no opportunity for profit or loss where "their investment in the business was negligible" and the putative employer "unilaterally dictated the nurses' hourly wage"); *compare, e.g.*, *Browning*, 885 F. Supp. 2d at 608 (finding that delivery drivers had the opportunity for profit and loss because "whether [they] made more money or less money depended largely on their investment in bigger vehicles and hiring additional employees in order to increase their efficiency and capacity"). There are also material disputes over the "permanence and duration of the working relationship": Although Defendant notes that Plaintiffs

9

were free to take on other employment if they wished (Def.'s Mem. 19), the reality is that Plaintiffs worked exclusively or primarily for the Hospital for at least seven years (Pls.' Mem. 18; *see also* Rocha-Waid Dep. 18:14-21; Kelly Affidavit, Ex. B, at 1; Landaeta Decl. ¶ 19). And the parties present a genuine disagreement over the final factor — the "extent to which the work is an integral part of the employer's business" — as well. Although Plaintiffs may well not have been irreplaceable or integral to the Hospital's mission writ large, *see Velu v. Velocity Express, Inc.*, 666. F. Supp. 2d 300, 307 (E.D.N.Y. 2009), they are surely correct that "[m]edical care cannot be provided to non-English speakers without medical interpreters." (Pls.' Mem. 18).

More fundamentally, the evidence does not clearly establish that, as a matter of "economic reality," the Plaintiffs were "in business for themselves." *Brock*, 840 F.2d at 1059. To the contrary, a reasonable fact finder could conclude that Plaintiffs were "depend[ent] upon [the Hospital] . . . for the opportunity to render service." *Id.* Among other things, most of Plaintiffs' income over the past decade was derived from their work at the Hospital, and any efforts they made to solicit outside business were minimal. (Pls.' SOF ¶ 7; Kelly Affidavit, Ex. R; Rocha-Waid Decl. ¶¶ 16-17; Washington-Cohen Decl. ¶¶ 22-23; Landaeta Decl. ¶ 19). Additionally, Plaintiffs did not form corporate entities to take on additional business, let alone maintain business websites, procure business stationery, or carry liability insurance. (Rocha-Waid Decl. ¶ 17; Washington-Cohen Decl. ¶ 22; Landaeta Decl. ¶ 19). For these reasons, this case is a far cry from *Browning*, where the "Plaintiffs were essentially small businessmen who owned their trucks; hired their own helpers; and had responsibility for their own investment and management." *Browning*, 885 F. Supp. 2d at 610. Instead, a jury could find that Plaintiffs' "work done, in its essence, follow[ed] the usual path of an employee." *Irizarry*, 722 F.3d at 104 (internal quotation marks omitted).

### 2. NYLL Claims

Turning to the NYLL claims, Plaintiffs also raise material questions as to the "existence and degree" of some of the *Bynog* factors. For instance, it is not clear that Plaintiffs truly did work at their own convenience or set their own schedules. Although Defendant argues that Plaintiffs were never required to work a set number of hours (Ramos Affidavit ¶ 15), the lack of a formal policy is not dispositive. For example, penalizing workers for refusing assignments can support a finding that the workers are, in fact, employees, *see, e.g.*, *In re Westney*, 692 N.Y.S.2d 501, 503 (3d Dep't 1999) ("[C]laimant testified that he could not refuse work without suffering the loss of future assignments. Such testimony, coupled with other evidence in the record, supports the Board's conclusion that [the putative employer] exercised sufficient direction and control over claimant and others similarly situated to establish an employment relationship."), and there is evidence suggesting that Plaintiffs could or would be penalized for declining assignments. Landaeta testified that, in the course of her administrative work for the ISO, Lenarduzzi instructed her to place interpreters "at the bottom of the list" or "remove [them] from the list altogether" if they turned down assignments. (Landaeta Decl. ¶ 11). In addition, although Defendant claims that Plaintiffs would advise the ISO of their availability for each week, and would only be given assignments according to their availability (Ramos Affidavit ¶¶ 5, 15), Plaintiffs contend that they were "assumed" to be "available to receive assignments at all times," and if they were not, it was their obligation to notify the ISO. (Landaeta Decl. ¶ 9; Rocha-Waid Decl. ¶ 9; Washington-Cohen Decl. ¶ 10). Further, at least one of the Plaintiffs — Landaeta — appears to have had a fixed schedule, interpreting from 9:00 a.m. to 3:00 p.m., and performing administrative tasks from 3:00 p.m. to approximately 6:30 or 7:00 p.m each and every work day. (Landaeta Decl. ¶ 10).

Beyond the specific *Bynog* factors, the evidence raises questions about the more fundamental inquiry into the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog*, 1 N.Y.3d at 198. Specifically, although Defendant contends that the Hospital did not supervise or evaluate Plaintiffs in their work (Reply Mem. Law Further Supp. Mot. Summ. J. ("Def.'s Reply Mem.") (Docket No. 53) 4-5), there is evidence suggesting otherwise. Plaintiffs have shown that the Hospital administered surveys to monitor their performance (Landaeta Decl. ¶ 16), that the ISO fielded calls from health care providers regarding interpreters' performance (*id.* ¶ 17), and that Landaeta and Rocha-Waid had to pass a test that assessed their interpretation skills as a precondition of employment (Landaeta Decl. ¶ 4; Rocha-Waid Decl. ¶ 4). Additionally, the record suggests the Hospital could and did discipline interpreters for unsatisfactory performance, including one instance when Lenarduzzi suspended Washington-Cohen for interacting with patients inappropriately. (Ramos Dep. 105:13-106:6). Although the Hospital may not have monitored Plaintiffs' performance in person, as was the case in *Brock*, 840 F. 2d at 1060, the evidence does suggest more than "minimal or incidental control over an employee's work product," *Bhanti v. Brookhaven Mem. Hosp. Med. Ctr.*, 687 N.Y.S.2d 667, 669 (2d Dep't 1999). Accordingly, Defendant has not established as a matter of law that Plaintiffs are independent contractors.

## B. *De Minimis* Exception to FLSA Wage Claims

The Court also rejects Defendant's argument that Plaintiffs' unpaid wage claims are *de minimis* as a matter of law. The *de minimis* doctrine permits employers to disregard otherwise compensable hours under the FLSA "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Singh v. City of New York*, 524 F.3d 361, 370-71 (2d Cir. 2008) (internal quotation marks omitted). Specifically, courts examine three

factors to determine whether the *de minimis* doctrine applies: "(1) the practical administrative difficulty of recording additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Id.* Applying those factors here, Defendant has not met its burden of demonstrating that the doctrine applies. First, the Hospital required Plaintiffs to record the times they arrived at the ISO prior to their first assignments (Washington-Cohen Dep. 37:24-38:7), so it could have easily required Plaintiffs to record the amount of time they spent at the ISO after their final assignment. (Pls.' Mem. 20). Second, Plaintiffs claim to have not been compensated for between twenty and forty-five minutes each day (Pls.' Mem. 20; Rocha-Waid Decl. ¶¶ 9, 11; Washington-Cohen Decl. ¶¶ 10-11), far more than the claims that the Court found to be "quite small" in *Singh*. *Singh*, 524 F.3d at 371 (claims "generally amount[ed] to only a few minutes on occasional days"). Finally, the allegedly unpaid work occurred each work day. (Rocha-Waid Decl. ¶¶ 9, 11; Washington-Cohen Decl. ¶¶ 10-11). Accordingly, Defendant is not entitled to summary judgment on this basis either.

**C.  Retaliation Claims**

Finally, the Court turns to Plaintiffs' retaliation claims. The anti-retaliation provision of the FLSA prohibits the "discharge or . . . other . . . discriminat[ion] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3); *see also* N.Y. Labor Law § 215 (anti-retaliation statute). To establish a *prima facie* claim of retaliation under the FLSA and its New York State analogue, a plaintiff must show: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010); *see also*

*Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013). Defendant argues that Plaintiffs claims should be dismissed because they have not made a sufficiently specific complaint to satisfy the first prong of this test. (Def.'s Mem. 23-24). Plaintiffs, on the other hand, contend that Washington-Cohen's complaint to Evelyn Ramos, the Director of Volunteer and Interpreter Services, meets this standard. (Pls.' Mem. 26-27).

To satisfy the first prong of the test for a *prima facie* claim of retaliation, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335 (2011). Similarly, under the New York Labor Law, Plaintiffs must show that they "complained about a specific violation of the Labor Law." *Castagna v. Luceno*, No. 09 Civ. 9332 (CS), 2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011) (quoting *Epifani v. Johnson,* 882 N.Y.S.2d 234, 244 (2d Dep't 2009)) (internal quotation marks omitted). Although an employee "need not cite a specific statute," *Kassman*, 925 F. Supp. 2d at 473, the complaint to the employer must "be of a colorable violation of the statute." *Castagna*, 2011 WL 1584593, at *12 (quoting *Weiss v. Kaufman*, No. 103473/2010, 2010 WL 4858896 (Sup. Ct. N.Y. Cty. Nov. 18, 2010)) (internal quotation mark omitted).

Applying those standards here, there is no genuine dispute that Washington-Cohen failed to assert her rights under either statute. Plaintiffs ground their theory of retaliation on the conversation (or conversations) that took place between Washington-Cohen and Ramos in December of 2011. (Pls.' Mem. 12, 26-27). In particular, Plaintiffs contend that Washington-Cohen told Ramos that she was a "*de facto* employee," and explained that a "*de facto* employee" is "when an employer misclassifies an employee as an independent contractor." (Washington-

Cohen Decl. ¶ 25).  But such allegations are not sufficient to have put the Hospital on notice that Washington-Cohen was asserting claims under either the FLSA or NYLL.  Washington-Cohen used the term in the course of complaining that the Hospital was not assigning her enough work.  Moreover, at no point did she say anything about minimum wages or overtime pay — or indeed, anything whatsoever about her compensation for the hours that she worked or about the Hospital's pay practices generally.  That is, the gravamen of Washington-Cohen's complaint was that she did not get enough work — not that she had been unlawfully paid for the work that she had done, which might have put the Hospital on notice of a claim under the FLSA or NYLL.

Construing the evidence in the light most favorable to Plaintiffs, Washington-Cohen complained to Ramos that she should have been classified as an employee rather than an independent contractor.  But misclassification merely means that she was *covered* by the FLSA or NYLL.  More is needed — such as an allegation that one has been deprived of pay — to make an affirmative "assertion of rights protected by the statute[s]," and Plaintiffs adduce no evidence that Washington-Cohen made any such assertions.  *See, e.g.*, *Kassman*, 925 F. Supp. 2d at 473 (dismissing FLSA and NYLL retaliation claims where "none of the[] complaints rises to the level of specificity required to state a retaliation claim under the FLSA or the New York Labor Law"); *Epifani v. Johnson*, 882 N.Y.S.2d 234, 236 (2d Dep't 2009) (holding that lower court should have dismissed retaliation claim based on complaint that did not clearly "pertain[] to any section of the [New York] Labor Law"); *compare Duarte v. Tri-State Physical Med. & Rehabilitation*, No. 11 Civ. 3765 (NRB), 2012 WL 2847741, at *3 (denying a motion to dismiss a New York Labor Law retaliation claim where plaintiff had allegedly been "inquiring about not being paid her overtime hours") (internal quotation marks omitted).  Accordingly, Plaintiffs'

retaliation claims fail as a matter of law, and Defendant's motion for summary judgment on these claims is GRANTED.[3]

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, Plaintiffs' retaliation claims are dismissed, but Plaintiffs' unpaid wage and overtime claims survive.

The parties are reminded that their Joint Pretrial Order and all related filings required by the Court's Individual Rules and Practices for Civil Cases must be submitted within thirty days. (Docket No. 13). The parties should be prepared to go to trial approximately two weeks thereafter. The parties shall immediately advise the Court by joint letter if they are interested in a referral to the assigned Magistrate Judge for purposes of settlement.

The Clerk of the Court is directed to terminate Docket No. 33.

SO ORDERED.

Dated: March 4, 2014
      New York, New York

                                             JESSE M. FURMAN
                                             United States District Judge

---

[3] In light of the foregoing, the Court need not, and does not, reach Defendant's argument that Rocha-Waid and Landaeta lack standing to bring retaliation claims based upon Washington-Cohen's complaint. The Court notes, however, that Plaintiffs' FLSA retaliation claims also fail because Washington-Cohen did not complain to a governmental authority, but only to her employer. *See Lambert v. Genesee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993). Although the Supreme Court held in *Kasten* that oral complaints constituted protected activity under the FLSA, it expressly refrained from deciding whether intra-company complaints did as well. *See Kasten*, 131 S.Ct. at 1336. Accordingly, *Lambert* remains controlling precedent in this Circuit. *See Kassman*, 925 F. Supp. 2d at 473 n.6.